# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

LORENA SANCHEZ,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

Case No. 1:22-cv-00091-SAB

ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL

(ECF Nos. 18, 23, 24)

## I.

## INTRODUCTION

Plaintiff Lorena Sanchez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1] For the reasons set forth below, Plaintiff's appeal shall be denied.

///

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (ECF Nos. 7, 8, 9.)

**II.**

**BACKGROUND**[2]

Plaintiff filed the instant application for Social Security benefits under Title II on November 7, 2017, alleging disability beginning August 3, 2017.  (See Admin. Rec. ("AR") 20, 198–204, ECF Nos. 11-1, 11-2.)  Plaintiff's claim was initially denied on January 9, 2018, and denied upon reconsideration on November 28, 2019.  (AR 88, 97.)  On February 23, 2021, Plaintiff, represented by attorney Charles D. Oren,[3] appeared via telephonic conference, for an administrative hearing before Administrative Law Kathryn D. Burgchardt (the "ALJ").  (AR 35–64.)  Vocational expert ("VE") Dennis Duffin also testified at the hearing.  On March 5, 2021, the ALJ issued a decision denying benefits.  (AR 17–34.)  On December 3, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)

Plaintiff initiated this action in federal court on January 21, 2022, and seeks judicial review of the denial of her application for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on May 11, 2022.  (ECF No. 11.)  On October 25, 2022, Plaintiff filed an opening brief.  (ECF No. 18.)  On February 14, 2023, Defendant filed a brief in opposition.  (ECF No. 23.)  Plaintiff filed a reply brief on March 1, 2023 (ECF No. 24), and the matter is deemed submitted on the pleadings.

**III.**

**LEGAL STANDARD**

**A.    The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] At the administrative level, Plaintiff was represented by attorney Charles D. Oren, of Oren & Oren.  (AR 102.)  Plaintiff is currently represented by attorneys Jonathan O. Pena and Dolly M. Trompeter, of Pena & Bromberg, PLC, in the instant appeal.  (See ECF No. 18.)

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities

2

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her]

---

that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, underline available at 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, March 5, 2021 (AR 22–29):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social

Security Act through December 31, 2022, and Plaintiff has not engaged in substantial gainful activity since August 3, 2017, the alleged onset date.  (AR 23 (citing 20 C.F.R. §§ 404.1571 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: diabetes with neuropathy, left lower extremity peripheral vascular disease/chronic venous insufficiency, plantar fasciitis, left talonavicular fusion and gastric recession, and bilateral shoulder adhesive capsulitis.  (Id. (citing 20 C.F.R. § 404.1520(c)).)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 23 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526).)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **light work as defined in 20 CFR 404.1567(b) except [t]he claimant can lift or carry 20 pounds occasionally and 10 pounds frequently.  She can stand or walk a total of four hours, and sit a total of six hours, in an eight-hour workday with normal breaks.  She can perform pushing and pulling motions with her upper and lower extremities within the aforementioned weight restrictions.  She [can] occasionally operate foot controls bilaterally.  She can occasionally climb ramps and stairs, balance, stoop, crouch, kneel and crawl.  She can perform work that does not require climbing of ladders, ropes or scaffolds, or overhead reaching bilaterally, or conveyor-belt work from right to left.**

(AR 23–27 (citing 20 C.F.R. §§ 404.1529; 404.1520c; SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 27 (citing 20 C.F.R. § 404.1565).)

At step five, the ALJ noted Plaintiff was born on October 18, 1978, and was 38 years old (which is defined as a younger individual age 18–49) on the alleged disability onset date; Plaintiff has at least a high school education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills.  (Id.

(citing 20 C.F.R. §§ 404.1563; 404.1564; SSR 82-41, available at 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)   Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as:

- Cashier II (Dictionary of Occupational Titles ("DOT") 211.462-010), a light work position with a specific vocational preparation ("SVP") level of 2, and approximately 570,000 jobs available in the national economy;

- Attendant, Self Service Store (DOT 299.677-010), a light work position with an SVP level of 2, and approximately 283,000 jobs available in the national economy; and

- Storage Facility Rental Clerk (DOT 295.367-026), a light work position with an SVP level of 2, and approximately 63,000 jobs available in the national economy.

(AR 27–28 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12, available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1, 1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)   With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT and, with respect to the specified RFC limitations, the VE's testimony was based on his professional experience.  (AR 28 (citing SSR 00-4p, available at 2000 WL 1898704 (Dec. 4, 2000)).)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from August 3, 2017 (the alleged date of onset) through March 5, 2021 (the date of decision).  (AR 28–29 (citing 20 C.F.R. § 404.1520(g)).)

## V.

## DISCUSSION

On appeal, Plaintiff asserts two challenges to the ALJ's decision: (1) the ALJ's RFC is unsupported by substantial evidence because she failed to account for limitations in Plaintiff's ability to reach in all directions; and (2) the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer legitimate reasons for rejecting Plaintiff's subjective complaints.  (ECF No. 18 at 1, 11–20.)  The Court shall

address Plaintiff's subjective complaints argument first, as it affects consideration of the ALJ's RFC determination.

### A.      Plaintiff's Subjective Testimony

1.      Legal Standard[7]

The ALJ is responsible for determining credibility,[8] resolving conflicts in medical testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

---

[7]  Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit, subject to the Ninth Circuit's recent clarification in Smartt v. Kijakazi, in which the appellate court indicated that the specific, clear, and convincing reasons requirement must nevertheless fit within the overall substantial evidence standard.  (ECF No. 23 at 21–22 n.7 (citing Smartt, 53 F.4th 489, 499 (9th Cir. 2022).)

[8] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, at *1-2.

1    Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980

2    F.3d at 1277.

3          Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

4    corroborated by objective medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a

5    claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is

6    not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e

7    will not reject your statements about the intensity and persistence of your pain or other symptoms

8    or about the effect your symptoms have on your ability to work solely because the available

9    objective medical evidence does not substantiate your statements.").  Rather, where a claimant's

10   symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide

11   an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81; see also Stobie

12   v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate

13   clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical

14   evidence to establish disability during the insured period; and (2) symptom testimony conflicted

15   with the objective medical evidence).

16         Nevertheless, the medical evidence "is still a relevant factor in determining the severity of

17   [the] claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v. Massanari,

18   261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Indeed, Ninth

19   Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from

20   testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to

21   meet the clear and convincing standard.  See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir.

22   2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008)

23   (affirming ALJ's determination claimant's testimony was "not entirely credible" based on

24   contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis

25   for rejecting the claimant's subjective testimony."); see also Woods v. Comm'r of Soc. Sec., No.

26   1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of

27   objective medical evidence may not be the sole basis for rejection of symptom testimony,

28   inconsistency with the medical evidence or medical opinions can be  sufficient." (emphasis in

1  original)).

2      Additional factors an ALJ may consider include the location, duration, and frequency of the

3  pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or

4  side effects of any medication; other measures or treatment used for relief; conflicts between the

5  claimant's testimony and the claimant's conduct—such as daily activities, work record, or an

6  unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility

7  evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's

8  statements and testimony, and other testimony by the claimant that appears less than candid.  See

9  Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035,

10  1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d

11  at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence;

12  the claimant's representations of the intensity, persistence and limiting effects of her symptoms;

13  statements and other information from medical providers and other third parties; and any other

14  relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

15      Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's

16  subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

17      2.  Plaintiff's Testimony

18      In her disability application, Plaintiff alleges disability based on an inability to stand for a

19  long period of time, having to wear a heavy boot, swollen feet, and needing to use a walker.  (AR

20  235.)  Plaintiff is a high school graduate with one year of college education.  (AR 39, 236.)

21      At the February 23, 2021 hearing, Plaintiff testified she has two children, an 18-year-old

22  and a 16-year-old, who both live in Plaintiff's house with her.  (AR 40.)  Plaintiff testified she

23  supervises her children at home while they engage in online classes and do their schoolwork.  (AR

24  41–42.)  Plaintiff's parents visit her twice a week.  (AR 42.)

25      Plaintiff plays games with her family, such as "Lottery," cards, and video games.  (AR 44.)

26  Sometimes Plaintiff would take her children to the park and spend time with them on the weekends.

27  (AR 43.)  Plaintiff drives whenever she is able to.  (AR 45.)  She would drive her children to and

28  from school, though sometimes she would ask her brother to do it.  (AR 43.)  Plaintiff reads,

watches TV, does crossword puzzles, and does "a lot of knicks and knacks." (AR 45, 46.) Plaintiff testified she can wash laundry, go grocery shopping, make meals for herself and her kids, do a "little bit" of cleaning, and wash dishes. (AR 48–50.) When Plaintiff cannot complete these household chores because her foot is swollen, she has difficulty walking, or her arms are hurting and she cannot lift anything, she lets her kids do them; however, Plaintiff acknowledged that her children were too young to drive in 2017, the date of alleged onset. (AR 43, 48–50.) Plaintiff also testified she likes making bracelets, but it is hard now because her arms start going numb or they get really weak. (AR 46.)

Plaintiff testified she constantly drops items because her shoulders are both "torn"; she sometimes cannot pick up a pot or a pan because they fall out of her hand; she uses a walker because sometimes her foot gives out or gets swollen; and the walker was prescribed by Plaintiff's doctor when she broke her foot in 2017. (AR 49, 50, 52, 53.) Plaintiff elevates her foot every day. (AR 52–53.) Plaintiff testified she spends the majority of her time "leaning," sitting, or in bed. (AR 52.) Plaintiff testified that she can only sit for 15–30 minutes at a time. (AR 53.) Plaintiff testified that when she wakes up, her arms are numb. (AR 54.) Plaintiff testified she is blind in her right eye, but sometimes she loses vision in her left eye as well, or experiences blurred vision. (AR 54–55.) Plaintiff testified that, on a "bad day," she cannot get out of bed or help out around the house; in 2017, Plaintiff would have one bad day per week, but this has gotten progressively worse and she currently experiences approximately three to four bad days per week. (AR 56–57.)

### 3.    ALJ's Decision

The ALJ's decision summarizes the medical and non-medical evidence and addresses each of the identified severe impairments and the limitations they caused to Plaintiff. (See, generally, AR 24–27.) As relevant here,[9] the ALJ found Plaintiff's diabetes has been managed with medication. (AR 24.) This finding is based on a December 2017 medical note that Plaintiff's diabetes were controlled; reports that by August 2018, Plaintiff's HGB A1c was reduced from 13+

---

[9] The Court notes Plaintiff does not challenge all of the ALJ's findings with respect to her interpretation and synthesis of the medical record and opinion evidence, but appears only to dispute the ALJ's findings as they relate to specific alleged symptoms/limitations (such as Plaintiff's continued use of a walker, leg elevation, and ultimate finding of ability to perform seated-light work).

to 7.1; January 2019 lab reports suggesting Plaintiff's diabetes were somewhat well-controlled, despite Plaintiff's report of trouble controlling the condition; and "[p]hysical examinations [that did] not reflect ongoing neuropathic [symptoms]…" (Id. (citing AR 452, 457, 500, 710).)

The ALJ also considered Plaintiff's vascular and lower extremity impairments. Regarding Plaintiff's vascular impairment, the ALJ noted, among other records, July and December 2017 studies showing normal waveforms and velocities with no sign of flow restriction; no evidence of significant stenosis or occlusion; no definite findings to suggest high-grade stenosis and no definite arterial occlusion; and no evidence of SVT or DVT. A February 2018 study showed severe reflux just regarding the right lower extremity. (Id. (citing AR 316, 339, 527, 574, 719).) The ALJ noted the records reflected bilateral leg swelling, with the left leg worse than the right. The ALJ noted Plaintiff reported some relief through leg elevation, and significant improvement with compression stockings. The ALJ also noted Plaintiff stopped using compression stockings on her left leg in December 2017, due to an alleged slow-healing left foot fracture, but appears to discount this reason on the basis that there is no imaging in the record showing Plaintiff sustained any fractures. (Id. (citing AR 317, 336, 400, 425, 707).) Instead, the ALJ noted x-rays showed moderate inferior subluxation of talus in November 2017 and January 2018, with no significant interval change by March 2018 or June 2018, though Plaintiff requested surgical intervention in September 2018. The ALJ noted, post-surgery, Plaintiff reported doing well; and records showed increasing bone consolidation, good alignment, and intact hardware; and normal gait, despite some complaints of pain with walking. (AR 24–25 (citing AR 389, 402–03, 493, 503, 508, 729).) Based on her interpretation of these records, the ALJ determined Plaintiff could only complete light work, with additional restrictions to standing/walking a total of four hours in an eight-hour workday, only occasional operation of foot controls, and additional postural limitations. (Id.)

The ALJ also considered Plaintiff's testimony, particularly regarding her ADLs, and concluded Plaintiff's activities are also generally consistent with an ability to do seated-light work. (AR 25–26.)

The ALJ also considered Plaintiff's testimony that she uses a walker and must elevate her foot every 30 minutes. (AR 26.) Specifically, the ALJ acknowledged that records from December

2017 and March 2018 note Plaintiff was using a walker, and records from December 2017 and February 2018 recommend leg elevation; similarly, at an emergency room visit in May 2018 for left great toe cellulitis, Plaintiff was given antibiotics and analgesics and advised that she could elevate the foot.  However, the ALJ notes none of the records indicate a recommended frequency or duration of leg elevation.  Furthermore, the ALJ notes these recommendations—particularly the May 2018 visit—were made within the context of an acute condition, with no evidence of associated ongoing work-related functional limitations.  The ALJ found no subsequent records indicated the medical necessity of a walker or a need to elevate the foot (every 30 minutes or for any other duration) on an ongoing basis.  Accordingly, the ALJ concluded limitations for use of a walker or lower extremity elevation in the RFC determination were not warranted.

The ALJ also considered the medical opinions and prior administrative medical findings in reaching the RFC determination.  The ALJ found the State agency physicians' opinions were somewhat persuasive, to the extent they opined Plaintiff is capable of light work, can stand/walk only four hours per eight-hour workday, and can occasionally perform postural activities.  (Id. (citing AR 70–72, 82–83).)  Notably, the State agency physicians opined Plaintiff suffered from acute problems, thus her condition was improving with medical treatment and was not expected to remain at a severity level to be considered disabling. Further, the opinions did not include recommendations for walker or leg elevation limitations.  However, the ALJ determined that even more restrictive functional limitations were warranted due to Plaintiff's shoulder and vision impairments reflected in the overall record.  The ALJ also acknowledged certain statements in Plaintiff's medical record stating that she is "not able to work." (Id. (citing AR 503–04).)  However, the ALJ rejected these statements as neither inherently valuable nor persuasive, pursuant to 20 C.F.R. § 404.1520b(c)(1)–(3).  Finally, the ALJ found Dr. Eghbal's December 2019 opinion was not persuasive because it was a check-the-box form that did not explain or support the extreme limitations asserted therein, nor was it supported by the record.  (AR 26–27 (citing AR 700–06).)

4.    Analysis

As noted, the ALJ identified the severe impairments of diabetes with neuropathy, left lower extremity  peripheral  vascular  disease/chronic  venous  insufficiency,  plantar  fasciitis,  left

talonavicular fusion and gastric recession, and bilateral shoulder adhesive capsulitis, and Plaintiff does not challenge this finding.  As a result, the ALJ was required to make a credibility finding as to Plaintiff's testimony.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  Because the ALJ made no finding that Plaintiff was malingering, she was required to give clear and convincing reasons as to why she did not find Plaintiff's subjective testimony about her limitations to be persuasive.  Id.

Plaintiff argues the ALJ failed to present any clear and convincing reasons for discounting her testimony.  More specifically, Plaintiff argues the ALJ's reliance on her ADLs was improper, and the ALJ failed to provide sufficient reasons to discount her testimony that she required a walker and leg elevation.  Further, Plaintiff argues the ALJ cherry-picked from the record to support her findings.  The Court finds these arguments to be unavailing, as follows.

**a.**      **Activities of Daily Living (ADLs)**

First, Plaintiff challenges the ALJ's findings arising from her reported ADLs.  (ECF No. 18 at 16–17, 19–20.)

After a detailed discussion of the medical record pertaining to Plaintiff's impairments, the ALJ noted Plaintiff testified she does some laundry; shops occasionally; drives occasionally; goes out rarely; does some dusting; prepares simple meals for herself and her kids; helps the kids with school; plays games as a family, including video games and cards; watches television; reads; make bracelets; does crossword puzzles; and supervises her kids in doing household chores, yard work, and preparing meals.  (AR 25–26.)  The ALJ also noted that, pre-COVID, Plaintiff took the kids to and from school, and sometimes went to the park.  The ALJ concluded that these activities "are generally consistent" with the RFC determination indicating "seated-light work."   (AR 26.)  Importantly, the Court notes the ALJ makes this finding after concluding the aforementioned medical records supported the RFC determination of light work with additional limitations.

Plaintiff, however, takes issue with the decision's concluding sentence at AR 26, arguing the ALJ failed to demonstrate how the identified ADLs establish Plaintiff may perform "seated light work" because she does not explain how the identified ADLs contradict Plaintiff's specific symptom allegations.  (ECF No. 18 at 16–17.)  The Court finds this argument somewhat misses the

mark.

Ninth Circuit caselaw demonstrates that even where a claimant's activities "suggest some difficulty functioning, they may [still] be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other grounds (citations omitted); Valentine, 574 F.3d at 693 (affirming ALJ's finding that claimant's ADLs contradicted his claim of "totally debilitating" impairments, including allegation that PTSD was so severe he was unable to work, and contentions about how debilitating his fatigue was). Thus, evidence of ADLs need not directly contradict or disprove a specific alleged limitation, but may, as here, cut against the ultimate claim of disability based on the allegation that impairments are "totally debilitating." See Smartt, 53 F.4th at 499 ("An ALJ may also consider whether the claimant engages in activities inconsistent with the alleged symptoms.")

Furthermore, the Court notes Plaintiff appears to slightly misinterpret the ALJ's decision by arguing the ALJ improperly relies solely upon ADLs to establish the RFC determination of "light work." To the contrary, the ALJ discusses the medical record as well as Plaintiff's testimony before reaching the "overall" conclusion that light work is appropriate. (See AR 24–26.) Thus, the ALJ does not conclude Plaintiff's ADLs establish a capacity to perform light work; but rather, that Plaintiff's ADLs are not inconsistent with the ALJ's finding that the previously discussed medical record supports her RFC determination. By isolating a single sentence at the end of more than two pages of discussion, the ALJ's "overall" finding that Plaintiff's "activities are generally consistent with an ability to do a seated-light work" is taken out of context. The Ninth Circuit has also cautioned against such parsing of an ALJ's opinion. See Molina, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned."); see also Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion," provided "those inferences are there to be drawn"). For these reasons, Plaintiff's argument is unavailing.

### b.    Use of Walker and Foot Elevation

Second, Plaintiff argues the ALJ failed to provide a clear and convincing reason to specifically discount her testimony regarding her use of a walker and the need to elevate her leg every 30 minutes.  (ECF No. 18 at 17–20.)  Plaintiff disputes the ALJ's finding that there was no evidence of the "medical necessity" to elevate her legs, on the basis that an ALJ may not reject pain allegations based on objective medical evidence alone.  (Id. at 17.)  Further, Plaintiff essentially argues the ALJ reached these findings by cherry-picking the record and failing to "conduct a thorough discussion and analysis" of it.  (Id. at 17–18, 20 (internal quotations omitted).)  Plaintiff's arguments are not well-taken.

The ALJ found Plaintiff's allegations were unsupported by the objective medical record, and they were inconsistent with the medical opinion evidence.  As noted, the ALJ acknowledged records from December 2017, February/March 2018, and May 2018, which indicated use of a walker and foot elevation.  However, the ALJ also noted these recommendations were made within the context an acute condition, with no evidence of associated ongoing work-related functional limitations; further, subsequent records did not indicate the medical necessity of walker use or foot elevation; nor did any of the records indicate a recommended frequency or duration of leg elevation.  Thus, the ALJ found Plaintiff's allegations to be uncorroborated by the medical evidence.

A lack of objective medical evidence, as Plaintiff correctly notes, does not in and of itself constitute a clear and convincing reason to reject symptom testimony, Vertigan, 260 F.3d at 1049; rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.[10]  See Burch, 400 F.3d at 680–81.  Here, however, the ALJ does provide another reason for discounting Plaintiff's allegation: inconsistency with the medical record.  See Stobie, 690 Fed. App'x at 911.  Notably, contradiction with the medical record constitutes a sufficient basis on its own to reject a claimant's

---

[10] The Court does note, however, that Plaintiff seems to argue the ALJ was required to prove the negative; namely, Plaintiff appears to argue the ALJ's conclusion that there is no evidence of the "medical necessity" to elevate her legs is unsupported by substantial evidence in the record.  Such an argument tends to turn the SSA's burden of proof on its head, forcing the ALJ to disprove Plaintiff's alleged limitation, rather than Plaintiff submitting sufficient evidence of her own disability.  Indeed, notably, Plaintiff does not point to any medical records in which a doctor prescribed ongoing use of a walker or foot elevation after her acute injury healed.  Thus, the ALJ's observation that subsequent records did not indicate the medical necessity of walker use or foot elevation was entirely accurate.

1    subjective testimony.  Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1161.

2          Here, as noted, the ALJ found the medical opinions of the State Agency medical consultants

3    to be persuasive to the extent they opined Plaintiff is capable of performing light work with certain

4    postural limitations.  These opinions were based on a review of the medical evidence through

5    November 28, 2018 (see AR 80–86), and therefore considered the medical notes discussing

6    Plaintiff's use of a walker and elevation of her leg, but nevertheless decline to identify any walker

7    or leg elevation limitations.  As such, the Agency medical opinions directly contradict Plaintiff's

8    allegations that such limitations are warranted.  See, e.g., Carmickle, 533 F.3d at 1160–61 (medical

9    opinion that claimant could lift ten pounds *frequently* contradicted claimant's allegation that he

10   could only lift ten pounds *occasionally*, and thus constituted a clear and convincing reason to

11   discount the claimant's subjective allegations); see also Thomas, 278 F.3d at 957 ("The opinions

12   of non-treating or non-examining physicians may also serve as substantial evidence when the

13   opinions are consistent with independent clinical findings or other evidence in the record").

14         Notably, Plaintiff has not raised a distinct challenge regarding the ALJ's evaluation of the

15   medical opinion evidence and therefore waives argument pertaining to that issue.  Lewis, 236 F.3d

16   at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court

17   "will not consider any claims that were not actually argued in appellant's opening brief" and will

18   only "review … issues which are argued specifically and distinctly in a party's opening brief.").

19   At bottom, the ALJ's reference to the medical records to identify inconsistencies in Plaintiff's

20   testimony constitutes a specific, clear, and convincing reason supported by substantial evidence in

21   the record that supports the ALJ's adverse credibility determination.  Lambert, 980 F.3d at 1277;

22   Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods, 2022 WL 1524772, at *10

23   n.4; Thomas, 278 F.3d at 957.

24         The Court also addresses Plaintiff's cherry-picking argument.  Plaintiff argues the ALJ

25   ignores much of the evidence to reach her RFC determination.  (ECF No. 18 at 17–18.)  Notably,

26   Plaintiff does not dispute the ALJ accurately summarized the medical record as showing Plaintiff

27   only used a walker to ambulate from December 2017 to March 2018; instead, Plaintiff argues this

28   "tells only a part of the story."  Plaintiff then proceeds to highlight other medical records, such as

her reports of chronic left foot pain and foot swelling, notes indicating she was not fully weight-bearing at the time, and Plaintiff's decision to proceed with reparative surgery for the left foot, in support of her argument that she was disabled at least from the period of September 2017 to July 2019.  But Plaintiff fails to acknowledge that the ALJ also considered these records in formulating the RFC determination.  (See, e.g., AR 24 (discussing leg swelling); AR 25 (noting Plaintiff requested surgery).)

Furthermore, Plaintiff's argument, at most, constitutes an attempt to present an alternative interpretation of the evidence.  As recently explained by the Ninth Circuit, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."  Smartt, 53 F.4th at 499.  Thus, as previously noted, this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); see also Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (when the evidence presented could support either affirming or reversing the Commissioner's conclusions, the court cannot substitute its own judgment for that of the Commissioner); Molina, 674 F.3d at 1111 ("we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").  Here, the Court "cannot say that the ALJ's interpretation of the available evidence was not rational, [therefore, it concludes] the ALJ's conclusions were supported by substantial evidence."  Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).

### c.    Consideration of Symptom Testimony in RFC Determination

Finally, Plaintiff argues that, because the ALJ improperly discounted her symptom testimony, the RFC does not account for Plaintiff's limitations based on her symptom allegations; consequently, the ALJ's hypothetical to the VE was incomplete, and the ALJ's reliance on the VE's testimony unwarranted.  (ECF No. 18 at 16–18.)  Having found the ALJ's adverse credibility determination regarding Plaintiff's testimony was appropriately supported by substantial evidence, however, Plaintiff's derivative RFC argument fails.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); Hairston, 827 Fed. App'x at 773 (summarily rejecting

claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."); see also Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE).

### B.   RFC Determination

In her independent RFC challenge, Plaintiff takes issue with the ALJ's inclusion of the limitation against overhead reaching.

#### 1.   Legal Standard

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2); 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195; see also Lingenfelter, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson, 539 F.3d at 1173–74 (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).  Accordingly, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations).

2.   Analysis

Plaintiff's RFC argument pertains specifically to the ALJ's inclusion of the limitation against overhead reaching bilaterally.  (ECF No. 18 at 11–15.)  However, Plaintiff does not argue that the limitation is unwarranted; instead, she takes issue with the ALJ's synthesis of the medical and nonmedical evidence to formulate the RFC determination inclusive of this limitation, but not others.  More specifically, Plaintiff argues the ALJ should have included a similar limitation with respect to reaching in all other directions, as well as overhead.  Plaintiff asserts several additional arguments in support of her RFC challenge; the Court finds all of them unavailing.

Notably, the premise of Plaintiff's argument is flawed: contrary to Plaintiff's argument, the ALJ does appear to have included limitations for reaching side to side as well as overhead reaching.  Specifically, in the RFC determination, the ALJ includes the limitation that Plaintiff can only perform work "that does not require climbing of ladders, ropes or scaffolds, or overhead reaching bilaterally, or **conveyor-belt work from right to left**."  (AR 23 (emphasis added).)  Jobs using a conveyor belt are deemed to require reaching, handling, and fingering.  See Jesus C. v. Saul, No. CV 19-1651-SP, 2020 WL 6955615, at *3–4 (C.D. Cal. Nov. 25, 2020).  The general requirement for "reaching" is defined as "extending the hands and arms in any direction."  SSR 85-15, at *7.

1    Thus, the ALJ's inclusion of a conveyor-belt limitation demonstrates consideration of Plaintiff's

2    ability to reach in all directions; the ALJ therefore sufficiently addresses this limitation in the RFC

3    determination.   Similarly, contrary to Plaintiff's argument, the ALJ considered and addressed

4    Plaintiff's testimony regarding not being able to grip or lift items; this is apparent in the RFC

5    determination's inclusion of lift/carry limitations that also apply to pushing/pulling, as well as

6    restrictions against climbing ladders, ropes or scaffolds.  (AR 23.)  While the latter limitation

7    certainly applies to Plaintiff's lower extremities, it also undeniably applies to Plaintiff's upper

8    extremities, as grasping onto ladders, ropes and scaffolds in order to climb them necessarily

9    requires the use and grip strength of the upper extremities as well as the lower ones.  See, e.g, Vine

10    v. Astrue, No. No. 09-2212-KHV-GBC, 2010 WL 2245079, at *3 (D. Kan. May 11, 2010), report

11    and  recommendation  adopted,  2010  WL  2245076  (D. Kan. Jun. 2,  2010)  (finding

12    "[r]educed grip strength makes an individual less able to support his own weight, and at least in

13    part,  justifies  the  limitations  against climbing ladders, ropes,  and scaffolds," thus,  restriction

14    against the same could be attributed to a finding that the claimant had diminished grip strength; and

15    holding "[claimant's] argument that the ALJ did not include limitations in [the] RFC attributable

16    to reduced grip strength … is clearly unsupportable on its face.").

17          Plaintiff's remaining arguments are equally unpersuasive.

18          For example, Plaintiff argues the ALJ "utterly failed to describe how the evidence

19    supported" the RFC determination with respect to Plaintiff's shoulder impairment.  (ECF No. 18 at

20    12.)  This statement is entirely belied by the ALJ's decision, which devotes nearly an entire single-

21    spaced typed page to expressly address the medical evidence in consideration of Plaintiff's bilateral

22    shoulder impairment:

23              With respect to the claimant's shoulders, an MRI of the right
                shoulder in September 2018 showed moderate tendinosis of the
24              supraspinatus and infraspinatus tendons, with a partial-thickness
                undersurface tear in the conjoined tendon region.  No full-thickness
25              cuff defects were noted.  The scan also showed glenohumeral
                synovitis and rotator cuff interval capsulitis, acromioclavicular
26              capsulitis, labral findings raising suspicion for a SLAP-type tear, and
                mild intracapsular biceps tendinosis (5F/2-3).  An MRI of the right
27              shoulder  in  February  2020  showed  arthropathic  right
                acromioclavicular joint; laterally sloping acromion type II; bright
28              signals in the critical zone of the right supraspinatus consistent with

21

tendinosis secondary to acromiohumeral impingement; tendinosis of the long of the right biceps brachii, muscle, tendon, and mild right glenohumeral effusion (15F/7-8).  An MRI of the left shoulder in February 2020 showed arthropathic left acromioclavicular joint; laterally sloping acromion type II; bright signals in the critical zone of the left supraspinatus tendon consistent with tendinosis/interstitial tear consequent to acromiohumeral impingement; mild left glenohumeral effusion; and small subcoracoid bursal fluid collections (15F/3-4).  Physical examination in November 2017 revealed mild right shoulder pain with movement (11F/128).  Later physical examination[s] note moderate tenderness, decreased range of motion of the glenohumeral joint, positive empty cans test, positive Hawkin's test, and positive impingement sign in the right and left shoulder girdle and arm (15F/1).  Due to the claimant's shoulder impairments, the undersigned has limited the claimant to work that does not involve reaching overhead.

(AR 25.)  As evidenced by the foregoing, the Court finds the ALJ did, in fact, carefully analyze and discuss the record in consideration of Plaintiff's shoulder impairment and formulation of the RFC determination.    The  ALJ  identified  specific  medical  records—which  constitute  substantial evidence—in  support  of  the  RFC  determination.    Based  on  this  comprehensive  review  and discussion of Plaintiff's later-produced medical records regarding her shoulder impairment, the ALJ determined the RFC required inclusion of a reaching limitation.  The ALJ expressly mentions overhead reaching here, but the RFC also includes a conveyor-belt limitation, which addresses reaching in other directions.  On this record, the Court finds Plaintiff's argument that the ALJ "utterly failed" to support her RFC determination with respect to Plaintiff's shoulder impairment with the medical evidence is unavailing.

Plaintiff also argues the RFC determination is an impermissible product of the ALJ's lay interpretation of the raw medical evidence because she rejected in part all other medical opinions—such as Dr. Eghbal's opinion—and the limitation in overhead reaching does not mirror a single medical opinion.  (ECF No. 18 at 11–12.)  Relatedly, Plaintiff argues because the ALJ rejected the medical opinion of the only doctor that reviewed the evidence pertaining to the bilateral upper extremity limitations, the ALJ was required to further develop the record by ordering additional testing to assess the limitations resulting from the shoulder impairment.  (Id. at 12–13.)  This premise has also been rejected by many courts and is not supported in law.

"An ALJ's duty to develop the record further is triggered only when there is ambiguous

1    evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes

2    v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th

3    Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); see also Brown v. Berryhill, 697 Fed.

4    App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record

5    was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact

6    Brown's doctors or further develop the record.).  The Court finds neither of the aforementioned

7    circumstances appear here, nor does Plaintiff argue the record is ambiguous.  In fact, as

8    demonstrated above, the ALJ considered medical evidence regarding Plaintiff's shoulders that post-

9    dates Dr. Eghbal's opinion.  Rather, the Court finds the record was adequate to enable the ALJ to

10   evaluate the evidence concerning the severity of Plaintiff's symptoms.  See, e.g., Agatucci v.

11   Berryhill, 721 Fed. App'x 614, 617–18 (9th Cir. 2017).

12        Plaintiff's contention that the ALJ was required to further develop the record solely because

13   there is no physician opinion that reviews evidence pertaining to her purported bilateral upper

14   extremity limitations is equally unavailing.  Notably, Plaintiff's contention is unsupported in law.

15   Indeed, Plaintiff does not cite to any legal authority to support her contention.  Rather, as discussed,

16   Ninth Circuit caselaw demonstrates an ALJ does not need to procure an additional physician

17   opinion to review unexamined medical records where the medical notes are unambiguous.  See

18   Brown, 697 Fed. App'x at 549.  To this point, Defendant's argument is also well taken: simply put,

19   there is always a gap in time between a non-examining State agency physician's review at the initial

20   and reconsideration levels and the ALJ's subsequent hearing decision, and "claimants routinely

21   continue pursuing care in the interim thereby generating new medical records.  If the mere passage

22   of time and presence of additional medical evidence in the record established ambiguity," then a

23   consultative examination or updated medical opinion would be required in every single Social

24   Security case.  See Corwin v. Kijakazi, No. 1:20-cv-00394-GSA, 2021 WL 5771658, at *6 (E.D.

25   Cal. Dec. 6, 2021).  Further, the Ninth Circuit directly rejected a similar argument asserted by the

26   claimant, regarding later-obtained evidence that was not reviewed by the state agency physicians.

27   In upholding the ALJ's reliance on these medical opinions, which did not discuss the subsequent

28   medical records, the appellate court explained, "there is always some time lapse between a

consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no time limit on such a gap in time.  At the time they issued their opinions, the non-examining experts had considered all the evidence before them, satisfying the requirements set forth in 20 C.F.R. § 404.1527(c)(3)."  Owen v. Saul, 808 Fed. App'x 421, 423 (9th Cir. 2020).  Thus, Plaintiff has not met her burden of showing the ALJ was required to further develop the record in this case. See Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).

Relatedly, to the extent she argues the ALJ has impermissibly substituted her own opinion for a doctor's professional interpretation of the record, Plaintiff's contention is also unavailing. Notably, the medical record does not support this contention.  The very medical records to which Plaintiff cites in her reply briefing (ECF No. 24) demonstrate a doctor reviewed Dr. Eghbal's opinion and discussed the related medical findings.  For example, in her December 26, 2019 letter to Dr. Eghbal, Dr. Carmen Fischer appears to question certain findings by Dr. Eghbal—such as a SLAP tear in the left shoulder—in light of the absence of updated MRIs of Plaintiffs' shoulders; Dr. Fischer further questions Dr. Eghbal's finding of SLAP tears by commenting that, if Plaintiff had such a condition "[i]t is unclear why [she] did not have arthroscopic surgery"; and, after examining Plaintiff, Dr. Fischer declines to assess Plaintiff with having any SLAP tears in her shoulders but instead only assesses Plaintiff with pain in shoulders and advises Plaintiff to "continue with ice treatment," and notes updated MRIs are required.  (AR 729–30.)  Similarly, the ALJ did not interpret the MRI films themselves, but considered the findings and impressions discussed by Dr. Amjad Safvi, who interpreted the films (AR 731–32).  Thus, the ALJ was not interpreting raw data, but merely synthesizing, weighing, and resolving conflicts in the medical evidence presented in the doctor's notes, assessments, and findings—as she is charged to do under the SSA Regulations.

To that point, as previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan, 260 F.3d at 1049.  It therefore falls squarely within the ALJ's province to synthesize the medical evidence, resolve conflicts and ambiguities in the medical testimony, and determine credibility.  See, e.g., Lingenfelter, 504 F.3d at 1042; Morgan, 169 F.3d at 603; Tommasetti, 533

1   F.3d at 1041–42; Benton, 331 F.3d at 1040.  Hence, "[t]he ALJ's RFC determination need not

2   precisely reflect any particular medical provider's assessment."   Althoff-Gromer, 2019 WL

3   1316710, at *13; Chavez, 654 Fed. App'x. at 375; see also Carver v. Colvin, 600 Fed. App'x 616,

4   620 (10th Cir. 2015) (finding ALJ "sufficiently captured the essence of the Section III functional

5   limitations," despite not repeating limitations as stated in the medical opinions "verbatim"; and

6   commenting, "[t]o conclude otherwise would parse the ALJ's language too finely.").

7        Indeed, not only does the RFC determination fall exclusively under the ALJ's province; the

8   Regulations and controlling legal authorities *require* an ALJ to evaluate the objective medical

9   evidence in the record.  See 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant

10  to your claim, we make findings about what the evidence shows.").  This necessarily includes

11  consideration of "medical signs" (which are "shown by medically acceptable diagnostic

12  techniques") and "laboratory findings" (including MRIs and x-rays).   See 20 C.F.R. §§

13  404.1513(a)(1); 404.1502(c) (defining laboratory findings); 404.1502(g) (defining medical signs).

14  Furthermore, contrary to Plaintiff's assertions, "ALJs need not seek the opinion of a medical expert

15  every time they review new medical evidence and make a RFC determination."   Bufkin v. Saul,

16  836 Fed. App'x 578, 579 (9th Cir. 2021).

17       Finally, Plaintiff argues the ALJ failed to explain why Dr. Eghbal's opinion "as it

18  specifically pertained to Plaintiff's capacity to reach" was unsupported or unpersuasive.  (ECF No.

19  18 at 13–14.)  Again, the Court disagrees.  In rejecting Dr. Eghbal's opinion in its *entirety*, the ALJ

20  explained

21          The December 2019 opinion of Dr. Eghbal is not persuasive (13F).
            That opinion is a check-box type form, and the extreme limitations
22          reflected therein are not well supported by explanation or citation to
            objective findings. **For example**, Dr. Eghbal provided no
23          explanation as to why the claimant is completely unable to lift or
            carry even up to 10 pounds (10F/1). In finding the claimant could
24          never operate foot controls with the right foot, but could do so
            occasionally with the left foot, Dr. Eghbal cited a broken left ankle,
25          but failed to explain how that condition would totally preclude
            operation of foot controls with the right foot (13F/3). In finding the
26          claimant was completely unable to stoop, kneel, crouch or crawl, Dr.
            Eghbal provided no explanation other than some illegible
27          handwriting. The handwriting may possibly say "See previous,"
            though that is certainly not clear. Even assuming Dr. Eghbal is
28          referencing the previous explanation, which is a reference to a broken

1
2
3
4
5

> left ankle, Dr. Eghbal did not explain how a broken left ankle allows for occasional climbing of stairs and ramps, but no stooping, kneeling, crouching or crawling. The extreme limitations reflected in this opinion are not consistent with the overall record, as no other source has suggested that the claimant is completely unable to lift or carry even 10 pounds, is totally precluded from operation of right foot controls, or completely unable to stoop, kneel, crouch, or crawl. Accordingly, the undersigned cannot find this opinion to be persuasive.

6
7
8
9
10
11
12
13
14
15

(AR 26–27 (emphasis added)); see also, e.g., Ford, 950 F.3d at 1155 (ALJ may discount check-the-box form opinion that does not contain any explanation of the basis of its conclusions, or that is unsupported or inconsistent with the treatment records from that medical provider); Tommasetti, 533 F.3d at 1041 (incongruity between a treating physician's opinion and the medical records constitutes substantial evidence to support an ALJ's reason for rejecting the physician's opinion of the patient's limitations).   As the foregoing demonstrates, the ALJ plainly considered the supportability and consistency factors relative to Dr. Eghbal's opinion, 20 C.F.R. § 404.1520c(b)(2), and supported her reasons for discounting Dr. Eghbal's opinion with substantial evidence from the record.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

16
17
18
19

Plaintiff's argument that the ALJ erred in failing to include further reaching limitations in the RFC determination is therefore unavailing.  On this record, the Court finds the ALJ reasonably interpreted the objective medical evidence and substantial evidence supports the ALJ's relevant findings and RFC determination.

20

**VI.**

21

**CONCLUSION AND ORDER**

22

For the foregoing reasons, IT IS HEREBY ORDERED that:

23
24

1.   Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 18) is DENIED; and

25
26
27

2.   The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Lorena Sanchez, and close this case.

28

IT IS SO ORDERED.

Dated:    **March 3, 2023**

_____
UNITED STATES MAGISTRATE JUDGE